[Civ. No. 19397. First Dist., Div. Two. May 23, 1961.]

CITY OF MORGAN HILL, Appellant, v. CITY
OF SAN JOSE et al., Respondents.

Ernest Rusconi, City Attorney, for Appellant.

Ferdinand P. Palla, City Attorney, Richard K. Karren, Senior Assistant City Attorney, and Harry Kevorkian, Assistant City Attorney, for Respondents.

SHOEMAKER, J.—This is a contest between two municipalities, Morgan Hill and San Jose, over the annexation of certain territory that extends some 7 miles from the city limits of San Jose to the boundaries of Morgan Hill. During the annexation proceedings Morgan Hill advised San Jose of its opposition to the proposal as presented, which went unheeded, so Morgan Hill brought this action to obtain an alternative writ of mandate and writ of review directing San Jose to terminate the proceedings to annex territory designated as "Riverside No. 1B." It set forth that San Jose had failed to comply with relevant sections of the Government Code governing such annexations, with the result that the annexation proceedings were invalid. Alternative writs were issued as prayed, San Jose filed its return, and after a trial before the court sitting without a jury, judgment was entered denying a peremptory writ of mandate and quashing the alternative writs theretofore issued, from which judgment Morgan Hill appeals.

There is no dispute that the area sought to be annexed includes territory that abuts on a public road, that a portion thereof lies within three miles of Morgan Hill, and that Morgan Hill has not consented to the annexation of said territory by San Jose. Upon these facts appellant Morgan Hill first contends that under Government Code, section 35105.5, its consent is required and that without it the proposed annexation is invalid. Respondent San Jose's position, on the other hand, is that admittedly "Riverside No. 1B" is not less than 210 feet wide at any place, such width being exclusive of highways, and hence that it is not a "strip" annexation within the meaning of said section 35105.5 or section 35002.5, and therefore the consent of appellant to the annexation is unnecessary.

[■■] The code sections last referred to were first adopted by the Legislature in 1951 to restrict certain extremes of gerrymandering accomplished by means of "strip" annexation. (*Rafferty* v. *City of Covina* (1955), 133 Cal.App.2d 745 [285 P.2d 94].) Said sections have since been amended, most recently in 1955. Section 35002.5, which is contained in

that part of the Government Code concerning annexations designated ''General,'' sets forth the requirement as to contiguous territory to the annexing city, as it is only contiguous territory that may be annexed. (Gov. Code, § 35104.)[1] Said section 35002.5 provides in part as follows:

''Territory shall not be deemed contiguous as the word 'contiguous' is used in this chapter if the only contiguity is based on a strip of land over 300 feet long and less than 200 feet wide, such width to be exclusive of highways.''

Section 35105.5 is a part of the Annexation Act of 1913 and applies to annexations of inhabited territory. The portion relevant to our discussion reads as follows:

''Notwithstanding the provisions of Section 35002.5, territory consisting of property abutting on a street, highway, or road, and such street, highway or road to the extent that it abuts such property together with any street, highway or road which connects such territory to the city may be annexed to a city pursuant to this article; provided, that if any portion of such territory or street, highway, or road is situated within three miles of the boundaries of any other city the consent of the legislative body of such other city shall first be obtained.

''For the purposes of this section, the 'road strip' is the street, highway or road which connects territory herein called the 'property to be annexed,' consisting of property abutting on a street, highway, or road and such street, highway, or road to the extent it abuts such property to the annexing city.

''Territory described in the first paragraph shall not be annexed if the distance measured by the 'road strip' is more than one-half mile from the point at which such 'road strip' connects with the city boundary to the point nearest to the city boundary at which it connects with the 'property to be annexed.' ''

It is apparent from a reading of section 35105.5 that an exception to section 35002.5 is made for ''road strip'' annexations when the ''road strip'' providing access to and connecting the territory annexed to the city is not more than one-half mile long, the section permitting the annexation of (1) territory consisting of property abutting on a street, highway or road, (2) a street, highway or road to the extent it

---

[1]''To qualify for annexation, new territory shall be contiguous to:
'' (a) The city, or
'' (b) Contiguous territory where the electors have voted for annexation to the city.'' (Added Stats. 1949, ch. 79, p. 117, § 1.)

abuts such property, and (3) the street, highway or road which connects such territory to the city.

The boundaries of the annexation here in question establish that it is not a "road strip" annexation, hence section 35105.5 does not apply and the consent of Morgan Hill is not required.

The parties each have an interpretation of section 35105.5 based upon what they consider to be the effect of the opening phrase of said section, namely, "[n]otwithstanding the provisions of section 35002.5." We are not called upon to express an opinion upon either interpretation in view of our conclusion.

Morgan Hill has affirmed that its first contention is its strongest point on this appeal and that if its consent is not required to the proposed annexation, it will be forever hemmed in. The Legislature has provided a set of rules regarding the annexation of both inhabited and uninhabited territory and has not seen fit in the present situation to make the consent of a city whose future enlargement is thus foreclosed necessary to the annexation proceedings of another municipality.

We now pass to the remaining objections of the appellant, which have to do with certain formalities required under the annexation acts and which appellant Morgan Hill contends had not been complied with as provided under the statutes.

The first of these objections urges the invalidity of the annexation on the ground that respondent San Jose has violated Government Code, section 35008,[2] in that the proposed annexation splits certain properties, thereby leaving out the dwelling residences of the owners who had not consented in writing to such splitting before respondent San Jose

[2] "The boundaries of territory proposed to be annexed shall not be fixed without the consent of the owner of the property so as to exclude the site of the residence dwelling of the owner of the property and to include the remainder of the property of such owner, where the site of the residence dwelling is contiguous or adjacent to the remainder of the property. If in any annexation proceedings boundary lines are fixed in violation of this section, the affected property owner may at any time before one year after the completion of the proceedings file a statement of the violation of this section with the clerk of the legislative body of the city annexing, or proposing to annex, such property and at its next meeting the legislative body shall by resolution exclude such property from the territory annexed. If the annexation proceedings have been completed, the legislative body shall transmit a certified copy of such resolution, describing the boundaries of the annexed territory, as changed, with the Secretary of State, who shall file it and transmit a certificate of the filing to the clerk of the legislative body and to the board of supervisors of the county in which the city is situated." (Added Stats. 1957, ch. 1665, p. 3046, § 1.)

adopted the resolution wherein it consented to the circulation of the annexation petition. Appellant's position is necessarily based upon its construction that the just-mentioned section, in conjunction with the action of San Jose giving its consent to the circulation of a petition for annexation, establishes as of the time of such consent the boundaries of the territory to be annexed. We do not so construe the law. First, a reading of the section shows that it *does not* purport to state the time when the boundaries of the proposed area are fixed, and secondly, the section *does* provide a remedy for any affected property owner whose consent was not obtained prior to the fixing of the boundaries to have his property excluded from the territory annexed. ▪ The section, rather than establishing a ground upon which annexation proceedings may be held to be invalid, appears clearly to us an expression on the part of the Legislature that even though the annexing city failed to obtain the required consents, nevertheless the annexation of which the property was a part shall not be rendered invalid. As we read the code sections with reference to annexation procedures, we are forced to conclude that even though the statutes require that the territory to be annexed shall be specifically described for the purposes of circulating the petition for annexation and for setting up and calling the election, nevertheless if certain formalities are not complied with the boundaries may be changed without affecting the validity of the annexation. (Gov. Code, §§ 35008, 35121.5; see also *People* v. *City of San Bruno* (1954), 124 Cal.App.2d 790 [269 P.2d 211].) ▪ We also note that the trial court made its findings that the parties whose properties were split consented thereto, both orally and in writing, prior to the fixing of said boundaries by the city council, and that consents were again given in writing before the adoption by the city council of the ordinance calling the annexation election within the said area. These findings are supported by the record and the annexation cannot be successfully attacked on this ground.

▪ The second objection under this heading is that the annexation proceedings are invalid because employees of the city of San Jose assisted the landowners favoring annexation in fixing the boundaries of the area and in drafting the petition for annexation and other required documents. Although we assume appellant's contention that initiating proceedings to annex territory on its own motion invalidates annexation proceedings, still the record in the instant case fails to sup-

port such a claim. The trial court made extensive findings, sufficiently supported by the evidence, that the annexation proceedings were initiated, carried on and controlled, by property owners in the territory and that the employees of San Jose merely assisted them at their specific request. It is true that certain documents were signed by employees of the city of San Jose in the name of the petitioning property owners. However, said signing was without question at the request and direction of said property owners. Neither the annexation statutes nor any law of which we know prevents a city employee from acting as an agent of a property owner for the mere purpose of affixing the signature of said owner to a document forming part of the annexation proceedings to which his employer is a party, and appellant does not cite us to any such authority. In our opinion, this objection is without merit.

 The third objection of this category is that land which is predominantly agricultural cannot be annexed to a city pursuant to the Annexation Act of 1913. (Gov. Code, §§ 35100-35158.) Appellant argues that the Annexation Act of 1913 applies only to inhabited territory, that the territory here involved being predominantly agricultural, is not inhabited territory subject to said act, but as a matter of fact and law is uninhabited territory subject to annexation only under the law provided for that type of area. With this argument we cannot agree. The record fully supports the facts found by the trial court that there reside in this area some 125 adults and an uncounted number of children, that of these adults 74 were registered voters, that these people were not concentrated in any particular portion of the territory but are scattered generally throughout the area, that there are 59 parcels of land and a minimum of 50 homes in the territory. The area was also found to constitute a unit or one geographical area. Government Code, section 35303, defines territory as uninhabited if less than 12 registered voters reside within it. Certainly the questioned territory overwhelmingly passes this test. [██ Additionally, the decisions of our courts have established that territory may be annexed to a city under the Annexation Act of 1913 even if portions of the territory are uninhabited, if considering the area as a whole it may fairly be said to be inhabited. (*City of Costa Mesa* v. *City of Newport Beach* (1958), 165 Cal.App.2d 553 [332 P.2d 392].) It is apparent that "Riverside No. 1 B" is within the rule and subject to annexation under the Act of 1913.

Appellant next alleges that the annexation proceedings were void because the property owners themselves did not sign the request for consent of the city council to commence annexation proceedings, nor the notice to circulate the petition for annexation, nor did they give their residential addresses on either document. We have heretofore discussed and disposed of this contention as to the first mentioned document. As to the latter document, the trial court found that the signatures there affixed were the true signatures of the property owners themselves. The burden was upon appellant to show that the signatures on the notice to circulate a petition for annexation were not those which they purported to be. This it has not done. True, appellant points to the testimony of one of the signers that it was not his signature which appeared upon a photostatic copy of this document. However, the original was not produced and there is ground for belief the witness was confused by reference to the photostatic copy. He did affirmatively state that he knew he had signed the original notice. Appellant furnishes no authority for the proposition that copies of the notice must be signed by the property owners themselves. Its position in this regard is untenable.

Appellant also alleges that the annexation is void because the addresses of the property owners are not set forth in either the request for consent or the notice of intention to circulate a petition. No such requirement is applicable to either of these documents. Section 35106 sets forth no such requirement and in regard to the notice of intention to circulate a petition, Government Code, section 35111, requires that "... proponents shall publish a notice of intention to do so pursuant to the Elections Code. ..." This reference to the Elections Code is made only with respect to the manner of publication and not with respect to the contents of the notice, for the second sentence of said section specifically sets forth what shall be required in such a notice. It states that "the names of the proponents" and "the specific boundaries of the territory proposed to be annexed" shall be contained in the notice. Had the Legislature intended to impose the additional requirement that the proponents write their addresses, it would have so provided.

Appellant's final contention is that the City Council of San Jose had insufficient evidence upon which to base passage of its Resolution 17222 and therefore never acquired jurisdiction over "Riverside No. 1 B." The resolution de-

clared San Jose's intention to call an annexation election and set a time and place for hearing protests. Appellant particularly objects to the council's finding in the resolution that more than 11 registered voters resided within the territory to be annexed and that the city clerk and registrar of voters had checked the petition and had certified that the petition was signed by not less than one-quarter of the qualified electors residing within the territory to be annexed. Appellant asserts that the city council had no basis for making these findings. The trial court found, however, and appellant does not deny, that the council had before it the annexation petition when it passed said resolution. In this petition the signers declared they constituted not less than one-quarter of the number of qualified electors residing in the territory to be annexed. The petition sets forth the residential addresses of the signers, showing that they reside in the territory. The council also had before it the certificate of the county registrar of voters and of the city clerk certifying to the sufficiency of the signatures on the petition and setting forth the total number of voters residing in the area to be annexed. Appellant claims that this certification is void because of the testimony by the city clerk to the effect that he had not personally compared the signatures on the annexation petition with those in the registrar's office, but had delegated this job to another employee who actually compared the signatures and acted under his general supervision and direction. In these proceedings, as is generally the case in the conduct of his office, a city clerk is entitled to employ assistants to carry out his duties. The checking of signatures by his representative complied with the statute. The certificate being proper, the adoption of Resolution 17222 was fully supported and valid. (*Swanson* v. *City of Orange* (1929), 97 Cal.App. 344, 349-350 [275 P. 889].)

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.